## STATE of Maine

### v.

### Edwin L. ALLEN.

Supreme Judicial Court of Maine.

Argued Jan. 21, 1992.

Decided April 15, 1992.

Thomas L. Goodwin, Gary Greene (orally), Asst. Attys. Gen., Augusta, for the state.

Michael Saucier (orally), Thompson & Bowie, Portland, for defendant.

Before McKUSICK, C.J.,* and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, and COLLINS, JJ.

ROBERTS, Justice.

Edwin L. Allen appeals from his conviction of manslaughter, 17–A M.R.S.A. § 203(1)(A) (Supp.1991), in Superior Court (Cumberland County, *Perkins, J.*). Allen challenges the court's failure to instruct the jury concerning lesser included offenses, the court's instruction on concur-

---

* McKusick, C.J., sat at oral argument and participated in the initial conference but retired before this opinion was adopted.

rent causation, and the sufficiency of the evidence. We affirm the conviction.

On December 14, 1989, Allen was living with his fiancee, Martha Goodrow, in a third-floor apartment on Oxford Street in Portland. That afternoon Leo A. Raymond, Jr., who lived in an apartment below that of the defendant, heard noises coming from above. Shortly thereafter, Allen came down the stairs shouting for someone to call an ambulance. Meanwhile, Allen Stover went upstairs in response to Allen's request for help. When he got to the apartment, Stover saw Allen kneeling next to Goodrow, who was lying on a bed while Allen compressed her chest with an open hand and blew into her mouth. Stover, who had been trained in CPR, told Allen to "take it easy" and "put her on the floor."

When Portland police officers Pelletier and Dunham arrived, Allen was on the floor cradling Goodrow's head in his lap. Officer Pelletier noticed that Goodrow's abdomen was swollen as though she were pregnant. Officer Pelletier performed CPR on Goodrow until the ambulance arrived. Goodrow died at the hospital.

According to the medical examiner who performed the autopsy, Goodrow suffered a number of external injuries including a swollen hemorrhage in both eyes, a broken front tooth, two distinct bruises on the upper sternum just under the neck, and 16 fresh bruises on the front of the abdomen and chest. Although some of the bruising of the sternum was consistent with medical administration of CPR, there were small oval-shaped bruises that were not consistent with open-handed compression. In addition, Goodrow's liver, pancreas, and portal vein were torn. The evidence established that the internal injuries were caused by compression against the spine consistent with a blow to the abdomen.

Allen made a number of statements regarding what had taken place before the police arrived. Initially, he told Officer Dunham that Goodrow had been drinking brandy and beer that day. Allen explained to Dunham that he had left for an hour and returned to find Goodrow "running around the apartment nude, highly excited, hysterical," whereupon Goodrow collapsed and Allen slapped her face and tried CPR. Later that evening Allen told a police detective that after returning to the apartment he found Goodrow on the bed. Allen then described to the detective a fight that ensued:

> He said she got up from the bed and was, I believe he used the word, erratic and began to walk around. He said he grabbed her. He said he didn't remember exactly what was said during the argument. He said that she kicked him and he kicked her, that she was hitting him and that he believed he hit her, and during the argument he apparently went to look in the bathroom to see if she he had hidden some drugs or alcohol, and she also ran out of the apartment.

The evidence showed that Allen looked for Goodrow but, unable to find her, returned to the apartment where he found Goodrow having spasms, spitting, and vomiting, as he had seen her do on a few prior occasions. Allen then began "repetitive hits and CPR and repetitive hits again" while she was on the bed. Allen admitted to Detective Burton that he had never had any formal training in CPR, though he had received some "hillbilly training" when he worked on an ambulance at age 17.

■ Allen contends that the court erroneously refused to give his requested jury instruction on reckless conduct as a lesser included offense. See 17–A M.R.S.A. § 13–A(2)(A) (1983). The State argues that reckless conduct is not a lesser included offense in a charge of manslaughter. We agree. Section 13–A states that a lesser included offense is an offense carrying a lesser penalty that, as legally defined, "must necessarily be committed when the offense or alternative thereof actually charged, as legally defined, is committed." 17–A M.R.S.A. § 13–A(2)(A). This includes crimes when the only difference is the culpable state of mind. See 17–A M.R.S.A. § 13–A(2)(B). Manslaughter is defined as causing the death of another human being recklessly or with criminal negligence. 17–A M.R.S.A. § 203(1)(A). Reckless conduct is defined as recklessly creating a substantial risk of serious bodily injury to another person. 17–A M.R.S.A. § 211 (1983). Conduct that "causes death" does not *neces-*

*sarily* create "a *substantial* risk of serious bodily injury." Despite the actual and unfortunate result of the death of another, the risk of defendant's conduct causing that result need not necessarily have been substantial.

Allen suggests for the first time on appeal that both aggravated assault and assault are lesser included offenses of manslaughter. Because Allen did not request any instruction on these offenses and regardless whether they are lesser included, the court acted within its discretion not to instruct the jury to consider them. *See* 17–A M.R.S.A. § 13–A(1) ("If a rational basis exists, the lesser included offense shall be considered by the factfinder if requested by either the State or defendant; otherwise, its consideration shall be a matter within the discretion of the court.").

Allen also contends that, although he did not request an instruction on concurrent causation, the court committed error in the form of that instruction. The last part of the instruction, Allen argues, had the effect of improperly directing a verdict on the issue. Even if we were to agree with Allen's characterization of the questioned instruction, we conclude the error was harmless. The court was not required to give any instruction on concurrent causation because there was no rational basis for the jury to conclude that the death resulted from any cause independent of the injuries inflicted by the defendant. *See State v. Peaslee,* 571 A.2d 825, 826 (Me. 1990); *State v. Hachey,* 278 A.2d 397, 401 (Me.1971).

Finally, we reject Allen's contention that the evidence was insufficient to support his conviction of manslaughter. The jury would have been warranted in rejecting Allen's CPR scenario and concluding that Goodrow's death resulted from a beating administered by Allen.

The entry is:

Judgment affirmed.

All concurring.